**People of the State of Illinois, Plaintiff-Appellee, v. James E. Jackson, Defendant-Appellant.**

Gen. No. 10,871.

Fourth District.

April 18, 1968.

James R. Potter, of Springfield, for appellant.

Charles J. Ryan, State's Attorney of Morgan County, of Jacksonville, for appellee.

CRAVEN, J., delivered the opinion of the court.

The defendant was found guilty, in a jury trial, of the offense of robbery and sentenced to a term of not less than three nor more than fourteen years in the Illinois State Penitentiary. In this appeal from that conviction, the defendant contends that there were certain errors and irregularities in the proceedings that deprived him of a fair trial and that the evidence failed to establish his guilt beyond a reasonable doubt. Our consideration of these points necessitates a summary recital of the evidence.

Three witnesses testified for the People—Alberta Cochran, Richard Cruzan and Deputy Sheriff William Dean Colwell. Alberta Cochran, in her testimony, related that she was employed as a waitress in a diner in Meredosia, Illinois, and that on April 21, 1966, at around 10 a. m., there were three patrons in the diner—the defendant and one William Flynn and Richard Cruzan. During the course of her testimony, she identified the defendant Jackson and Flynn as the two men who were in the restaurant.

Cruzan testified that he was in the restaurant at around 10 a. m. on April 21 and that the time that he was there two other customers were present, identified by Cruzan as the defendant and Flynn. He related a conversation with Mrs. Cochran as to his proposed itinerary for the morning and indicated that the conversation would have been audible to the defendant and Flynn. Flynn and defendant left the restaurant at approximately the same time as Cruzan. Cruzan went from the restaurant to a residence about one mile north, calling on prospects for some insurance. As he was proceeding from the residence north on a road described as the beach road, toward Sunset Beach, he came upon an automobile that was stopped. He described the car. He stopped his own car, got out and approached the vehicle in front of him and made inquiry as to whether or not he could be of assistance. A man at the car made a threatening gesture, holding something in his hand, and another man, identified as the defendant Jackson, came up from behind the witness and grabbed him. The witness was beaten. He then related that he got back into his car, turned it into a lane and headed back toward Meredosia. He apparently lost consciousness after he began to drive away from the scene. The persons to whom he sold the insurance saw the car and when the witness regained consciousness, these persons were at his car in a ditch.

209

Money and checks that had been on the person of the victim were missing. The witness was subsequently hospitalized for some eleven days. The defendant and Flynn were positively identified by the victim as the two persons who attacked and robbed him. The witness described the automobile of his assailants and an object sticking out of the window of the car which he stated looked like a power saw.

William Dean Colwell, in his testimony for the People, related that in his capacity as a deputy sheriff he investigated the robbery of Cruzan on April 21, 1966. In connection with that investigation, he alerted neighboring police jurisdictions with reference to the car and its description and a physical description of the assailants. In response to a call from the sheriff of Brown County, the defendant and Flynn were arrested. They had a car similar to the described vehicle and there was a chain saw sticking out the right rear window. From pictures of the defendant and Flynn, Cruzan identified them as his assailants, and they were arrested.

▮ Several witnesses testified for the defense. The substance of their testimony was to establish an alibi for the defendant. It is not necessary to relate this testimony in detail, but it is clear from the testimony that if these witnesses were believed by the jury their testimony would so locate the defendant at the time of the robbery as to make it physically impossible for him to have been at the scene of the crime. In this case, as in the case of William Flynn, the alleged accomplice previously considered (People v. Flynn, 89 Ill App2d 328, 231 NE2d 710 (4th Dist 1967)), it cannot be said from our examination of the record that the defense of alibi was so conclusive as to raise a reasonable doubt warranting this court to reverse the conviction. The question of guilt or alibi on this record became solely a question of credibility for the trier of fact.

During the trial of this case, the deputy sheriff Colwell gave a member of the jury a ride home. On the occasion of that ride another deputy and William Flynn were in the automobile with Colwell and the juror, John Farmer. When this fact was made known to the court, Colwell was recalled and he described the automobile ride as lasting for approximately five minutes and testified that there was no mention of anything to do with the trial by any of the occupants of the car during the drive. The jury returned a verdict finding the defendant guilty. The jury was polled and the court discharged the jury.

The court then called the juror, John Farmer, as a witness. He related that he was given a ride home by Colwell and that William Flynn and another deputy were in the car. He also testified that there was no mention between them of anything or anyone involved in the trial. The motion for a new trial asserted that the defendant was denied his right to a trial by a fair and impartial jury because of this action on the part of a prosecution witness, a deputy sheriff, during the trial of the proceedings. From this record, in connection with this point, we learn that William Flynn was admitted as a voluntary patient at the Jacksonville State Hospital during the course of the trial and was not called as a witness in the proceeding by reason of that fact. This was stipulated to by the respective parties.

The defendant argues rather persuasively that allowing the jury to separate and allowing a juror to accept a ride from a deputy sheriff who was a witness at the proceeding so contaminates the proceeding as to require a new trial. The defendant relies heavily upon the case of Turner v. State of Louisiana, 379 US 466, 13 L Ed2d 424, 85 S Ct 546 (1965). In that case, two deputy sheriffs who were the two principal prosecution witnesses were in continuous and intimate association with the jurors. On appeal, the Supreme Court of Louisiana determined

that no prejudice was shown and affirmed. In reversing, the United States Supreme Court concluded that "it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution." (379 US at 473.) Prejudice was therefore determined to have been established as a matter of law by reason of the continuous, close association of the prosecution witnesses and the jury. The trial court, in this case, in an effort to determine the existence of prejudice, called the juror involved and the deputy sheriff. He determined that there was no prejudice shown.

 We are not persuaded that the casual relationship here, however ill-advised, was such as would constitute prejudice of the defendant's right to a fair trial as a matter of law. All of the matters developed subsequent to the proceeding, upon inquiry, negated the existence of any prejudice. That which the trial court did was in accord with the recent statement of the Supreme Court in People v. Georgev, 38 Ill2d 165, 230 NE2d 851 (1967), and cases there cited.

 Finally, it is urged that the defendant was entitled to a new trial by reason of the fact that one of the jurors, on the night the jury separated between the two days of trial, went back to his employment as a hotel clerk and had a conversation with a Mr. Leadill who said that he knew the defendant's alleged accomplice, Flynn, and one of the persons who testified to establish alibi. Leadill allegedly told him that he would not believe either the accomplice or the alibi witness under any circumstances. This statement by the juror was established by the testimony of an attorney who related it as a conversation with the juror. This juror, Thomas Mandeville, was called as a witness in connection with the motion for a new trial and related a substantially different story. This juror further testified that the alleged conversation

212

was not on the night that the jury separated and that he had heard nothing before or during the trial with reference to the proceedings or the participants. The motion for a new trial was then denied. We find no error.

This record demonstrates that the trial court made every effort to ascertain the existence of any prejudice that would deny the defendant a fair trial. No prejudice was established and no facts are demonstrated that, under the rule in Turner, would require us to find prejudice as a matter of law. People v. Georgev, 38 Ill2d 165, 230 NE 2d 851 (1967); People v. Cain, 365 Ill 494, 6 NE2d 1013 (1937); see also Anno 41 ALR2d 227, 249. The defendant sought a new trial on newly discovered evidence. The defense was, as we have noted, one of alibi. Six alibi witnesses did testify. That which is described as newly discovered evidence is, in our opinion, clearly cumulative and is not of such a conclusive character as to require a new trial. The judgment of the circuit court of Morgan County is affirmed.

Judgment affirmed.

SMITH, P. J. and TRAPP, J., concur.